The complainant's bill is filed to enjoin the defendant from proceeding to sale in the foreclosure of its mortgage until *Page 545 
the further order of the court, and is before me on the return of an order to show cause. It is substantially an application for a stay of execution in the foreclosure proceeding and might more properly have been presented by a petition in the cause instead of by independent bill. The form will be disregarded and the substance considered.
Defendant's mortgage is in the principal sum of $219,000, plus accumulated interest and taxes, the whole totaling $257,000. Complainant, now the owner of the premises, holds a second mortgage of $25,000, in which she assigned various interests to various parties, but retained to herself an interest therein for approximately $12,000. There was also a subsequent mortgage in the sum of $5,400 held by Elias Kanter. This mortgage was foreclosed and at the sheriff's sale, April 15th, 1932, complainant purchased the premises. December 17th, 1932, the John Hancock Mutual Life Insurance Company filed its bill to foreclose and the property is now being advertised for sale.
The bill is predicated generally upon the present economic situation. It is charged that if the foreclosure sale is permitted to proceed there will be no competitive bidding; that it is impossible at present for the complainant to procure a mortgage loan and that while "there has been a slight betterment in business conditions, complainant is advised and believes that with the betterment thereof and with the lapse of some intervening time she will be able to raise by means of mortgage upon the said real estate sufficient moneys wherewith to satisfy and discharge the decree of John Hancock Mutual Life Insurance Company." Stripping the bill of much verbiage, substantially the relief sought is an injunction to restrain the defendant from sale of the premises until the present economic conditions have passed to the extent where there will be an active market for real estate and an opportunity for the complainant to either sell her equity in the property at a profit or obtain a mortgage. She charges that the fair value of the mortgaged premises is at least $350,000, even in the present depressed condition of real estate. Attached to the bill of complaint are affidavits, one by Frank Hannock, *Page 546 
vice-president of the Fiedler Appraisal Corporation, that in his opinion the value of the property is $345,000 at the present time, and Henry C. Beech, another affiant, places the value at $325,000, while on behalf of the defendant, Edward E. Murdock states the fair value to be $247,000, and Robert B. Stoutenburgh says the same.
The defendant is pursuing an absolute right which it has under the law of this state. The probability, or even the possibility, of the complainant realizing her hopes is extremely remote. The mortgage is due and the defendant, under the bare allegations of the bill, cannot be halted to await the time when she may be put in funds to pay the debt. Cashin Co. v. Alamac Hotel Co.,98 N.J. Eq. 432; 131 Atl. Rep. 117. While not doubting the inherent power of the court to grant relief under appropriate circumstances our courts have uniformly looked with disfavor upon application for interference with orderly procedure in foreclosure suits unless inequity is apparent, holding that the defendant therein has no right to obstruct the process of law invoked by the mortgagee for the collection of his debt. Davis
v. Flagg, 35 N.J. Eq. 491.
We held in Security Building and Loan Association v. Grande,102 N.J. Eq. 320; 104 Atl. Rep. 580, that an orderly foreclosure suit would not be stayed until the owner could put himself in funds to pay off the debt by a recovery from the insurance company in a suit at law. In Fifth Avenue Bank of New York v.Compson, 113 N.J. Eq. 152, we recognize the present world-wide financial emergency, and said that this may necessitate "new applications of legal and equitable rules and concepts" and partial or perhaps complete disregard of rules laid down in the past. Vice-Chancellor Berry, speaking for the court in that case, recognized the trend of modern judicial opinion and, quoting from the language of Judge Cardozo in Graf v. The Hope BuildingCorp., 254 N.Y. 1, 8; 171 N.E. Rep. 884, 888, in which the learned justice said: "Let the hardship be strong enough and equity will find a way though many a formula of inaction may seem to bar the path," added, "but this is a power which should be sparingly used," and in the case under consideration *Page 547 
refused to restrain the execution sale pending financial recovery. This court has inherent power to control its own judicial proceedings and processes. Federal Title and MortgageGuaranty Co. v. Lowenstein, 113 N.J. Eq. 200. This it will do in such manner as to prevent an injustice under circumstances calling for the exercise of the power. In the instant case there is a sharp conflict in the affidavits of the experts as to the value of the property at the present time. The defendant's affiants place the value no greater than $247,000, while the complainant's affiants set the value at a minimum of $325,000 and a maximum of $345,000, the average thereof being $296,000. Meanwhile I doubt whether under present conditions there exists any commonly accepted basis upon which the value of real estate can, with reasonable definiteness, be determined. However this may be, the fact remains that what the complainant seeks is the intervention of this court to the end that it may stay its process in which is admittedly an orderly foreclosure suit until we shall again return to a period of prosperity when the value of this property will have increased to such an extent that complainant may sell or mortgage and so discharge the debt to defendant. Her investment at best is not in excess of $17,400. Complainants first mortgage, interest and taxes in arrears, total approximately $257,000; the second mortgage is in the sum of $25,000, in which she holds an interest approximating $12,000. To obtain a first mortgage she would require, therefore, $270,000 in order to discharge prior encumbrances. Her equity in the property is uncertain and shrouded in conjecture. The injunction is sought in aid of an apparent purpose to speculate with the defendant's investment of $257,000, as against complainant's of only $17,000 upon a future rising market. The rule here applicable is that laid down in Fifth Avenue Bank of New York v. Compson, supra, and United Building and Loan Association v. Newman, 113 N.J. Eq. 244.
In the former case we held the defendant mortgagor's security would not warrant a speculation upon the return of prosperity to the prejudice of the complainant; and in the latter, that this court should not anticipate a sale under the *Page 548 
decree at an unconscionable price, unless the reasons advanced are cogent. While the form of relief here sought varies from that sought in the Newman Case, the same equitable processes govern here, and the reasoning of the cases applies with equal force. It would be an injustice to the defendant mortgagee under these circumstances and in view of its sizable investment as compared with the investment of the complainant to permit complainant to speculate upon a future market.
The order to show cause will be vacated and the bill of complainant dismissed.